IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAN DOUGLAS DAVIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:10-KOB-0340 |
| | ) |
| **MICHAEL ASTRUE,** | ) |
| **Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On October 6, 2008, the claimant, Jan Douglas Davis, applied for disability insurance benefits and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (hereinafter, "the Act"). (R. 39). The claimant alleges disability commencing on September 30, 2008, because of arthritis in his hands, knees, and ankles. (R. 40). The Commissioner denied the claim both initially and on reconsideration. (R. 1-3, 39-43). The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on September 1, 2009. (R. 6). In a decision dated September 10, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for supplemental security income. (R. 42-43). On December 18, 2009, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: (1) whether the ALJ correctly proceeded with the hearing after addressing claimant's right to an attorney both before and as the hearing began; (2) whether the ALJ properly made Residual Functional Capacity (RFC) findings; (3) whether the ALJ made proper credibility findings by discounting claimant's subjective complaint of pain as inconsistent with the objective medical evidence in the record; and (3) whether substantial evidence supports the ALJ's decision that claimant retains the RFC to perform jobs that exist in significant numbers at the medium and light exertional levels.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of  "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider

whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

A claimant may waive his right to counsel provided the waiver is made knowingly and intelligently. In order for a waiver to be effective, the claimant must be properly apprised of his options concerning representation. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). Although the right may be waived, the Commissioner has an obligation to notify the claimant of his right to counsel. *Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir. 1985). The notice must inform the claimant of both the possibility of free counsel and the limitation on the recovery of attorney's fees. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982).

"Residual functioning capacity" ("RFC") is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a), [20 C.F.R. § 416.945(a)]. The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. 20 C.F.R. § 404.1545(b), [20 C.F.R. § 416.945(b)]. State agency consultants are considered experts in the Social Security disability programs and their assessments may be entitled to great weight if their opinions are supported by the evidence in the record. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p.

## V. FACTS

The claimant was fifty-four years old at the time of the administrative hearing. (R. 42).

Claimant has a high school education, and is able to communicate in English. (R. 42, 140). His past relevant work is limited to his ownership of a scrap and parts company from 1982 through September 2009 (R. 118). He has no transferable skills from past work. (R. 42).

*Physical Limitations*

Claimant alleged disability because of arthritis in hands, knees, ankles. (R. 9).

On December 4, 2008, Dr. James M. Lance, Jr., a radiologist, responded to the Disability Determination Service regarding the claimant, writing that the radiographs of the right knee and right ankle taken on December 3, 2008 revealed ". . . early degenerative changes; however the joint space appears preserved. No acute abnormalities are apparent." (R. 177).

On December 23, 2008, State medical consultant, Dr. Whitney, completed claimant's Physical Residual Functional Capacity Assessment, which revealed a number of claimant's abilities. (R. 179-186). The physical assessment showed that the claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in a eight hour workday, and push and/or pull for an unlimited period. These conclusions were based on the evidence of the claimant's age and medical examinations. Dr. Whitney also found claimant's postural abilities included the ability to frequently climb ramp/stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladder/rope/scaffolds. Lastly, claimant's environmental limitations could withstand unlimited heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, hazards, but avoid concentrated exposure to extreme cold. (R. 180-181).

On December 26, 2008, a Disability Specialist, Renita Parker from the Alabama Determination Service, filled out a Vocational Rationale Form on behalf of claimant. In the assessment form, the specialist checked off that claimant's maximum work capacity was medium

work and that claimant did not acquire transferable skills. Additionally, she listed examples of jobs the claimant could perform, which included assembler, automatic machine attendant, and box maker. All the jobs were listed under the medium strength/skill level. (R. 142-143).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 4). On September 1, 2009, at the hearing before the ALJ, the claimant testified that he understood he had a right to a representative but chose to represent himself. (R. 8-9). The claimant testified that he is disabled because of arthritis in both hands, knees, and ankles. (R. 9). The claimant testified that the Social Security doctor he went to only X-rayed and checked one side, one ankle, and one knee. (R. 9-10). The claimant testified that he received treatment from American Family Care clinic once in 2009, none in 2008, and one time in 2007. (R. 11-13). The claimant testified he had dated health cards in his truck providing health clearance for driving a truck with an X2 tag, indicating he could haul up to 26,000 pounds in it. (R. 14). Claimant stated that he uses the truck to haul scrap metal, and later stated that he usually uses the truck for transportation and his wife "pick(s) stuff up with it." (R. 14, 27-28).

The claimant testified that although his application for disability was on September 30, 2008, he became disabled before that date when he came to a point where he was unable to pick up scrap, pieces would uncontrollably fall out of his hands, and he could no longer crawl up big piles of scrap metal. (R. 17). The claimant testified that his wife was now running part of his business by selling scrap and parts on the Internet. (R. 21).

At the hearing, vocational expert, Ms. Jacobson, testified concerning the type and availability of jobs the claimant was able to perform. She stated that claimant's previous work as

the owner/operator of a scrap metal business was at least "heavy," and it was at least "semi-skilled." She also noted claimant did not have any transferable skills. (R. 27). Based upon the RFC assessment of Dr. Whitney, she further testified that a person with that assessment could perform sedentary, light, and medium work. (R. 29). The ALJ then asked Ms. Jacobson to assume a person of claimant's age, education, and work history, and assume further that his functional limitations are limited in the matter that was described in that assessment, asking if she could give two jobs the claimant could perform. (R. 29-30). She replied claimant could not return to past relevant work, but that claimant could perform two types of cleaning jobs at the light and medium levels: industrial cleaner or commercial cleaner, where at least 6,000 light and at least 30,000 medium jobs existed. *Id*.

## *The ALJ's Decision*

On September 10, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 36, 39). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability but was not fully convinced that claimant was completely candid when he testified about his work activity. (R. 40). Next, the ALJ found that the claimant had a mild degenerative joint disease of the knees and ankles and obesity but did not find that the claimant's impairments or combination of impairments met or medically equated to an impairment in the Listing of Impairments. (R. 40).

The ALJ next considered the claimant's subjective allegations of pain to determine whether he had the residual functional capacity to perform past relevant work. (R. 40-41). The ALJ found that the claimant's "degenerative joint disease could reasonably be expected to produce *some pain*, his statements concerning the intensity, persistence, and limiting effects of the pain are not entirely credible because they are not consistent with the evidence of the record."

(R. 41) (emphasis in original).

To support his conclusion, the ALJ first referenced the treatment notes of Dr. Whitney, the State agency medical consultant, where x-rays of claimant's right ankle and knee revealed only early degenerative changes, with joint spaces preserved and no acute abnormality. The ALJ then found that claimant was less than candid about his current work activity because of inconsistencies in his testimony. For example, he had testified that he had been the owner/operator of a scrap metal business for many years but stopped around July 2008 because of the pain and then turned his business over to his wife. However, claimant repeatedly referred to his business activity in the present tense, but would then correct himself and use the past tense. (R. 41).

Additionally, claimant testified at one point that he owned a large 2-ton truck he uses to haul scrap metal but later testified he used the truck for transportation only. Claimant also testified that his business was heavily involved in the internet purchase of items, such as motors and parts, giving the ALJ a clear impression that he was still engaged in this activity. (R. 41-42). Moreover, the ALJ found that no medical evidence suggests that claimant would not be able to engage in the internet activity.

Based on the vocational expert's testimony, the ALJ concluded that the claimant had no transferable skills from past work but was able to adjust to other jobs existing in significant numbers in the national economy. The vocational expert testified that a person of claimant's age, education, work experience, and RFC, could perform the following jobs: Industrial Cleaner (light, unskilled work) and Commercial Cleaner (medium unskilled work), 36,000 of which jobs exist in the State of Alabama. *Id*. Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retained the capacity for work in jobs that exists in

significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. *Id*.

## IV.  DISCUSSION

**A.     Right to an Attorney**

Claimant argues that no proof exists that the ALJ mentioned claimant's right to representation and the court transcript provide proof of a written waiver of the right to an attorney. The court finds to the contrary: the ALJ gave ample instruction and notice about the claimant's right to an attorney both before and during the administrative hearing.

A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Although the right may be waived, the Commissioner has an obligation to notify the claimant of his right to counsel. *Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir. 1985). Notice is insufficient where "the ALJ informed [the claimant] of her right to counsel, [but did not] specify, as required, that if she could not afford an attorney, a list of potential 'free' counsel could be provided." *Id*. The notice must inform the claimant of both the possibility of free counsel and the limitation on the recovery of attorney's fees. *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

In this case, on December 29, 2008, claimant received the Notice of Disapproved Claim that listed several ways to acquire representation. Specifically, it read "[y]ou can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal." (R. 45).

Additionally, on July 1, 2009, claimant received a Notice of Hearing with instructions including information about representation (R. 60). Moreover, a document titled "Your Right to Representation," which included instructions for free representation, was duly enclosed as well (R. 65-66). The Commissioner fulfilled his duty to notify claimant his right to counsel.

At the hearing on September 1, 2009, the administrative hearing transcript reveals that the ALJ discussed the claimant's right to representation before the hearing began and also after the hearing began so that the court reporter could transcribe the claimant's testimony. The communication between the ALJ and claimant was as follows:

**ALJ:**      Now I, you and I had briefly chatted pre-hearing about your right to representation. You do understand that you have a right to a representative, but you've chose to represent yourself today, is that correct?
**Plaintiff:** Yes, Sir.

(R. 8-9). Claimant was a middle aged business man and has a high school degree. Given the claimant's educational background (R. 18) and past work experience (R. 118-119), this court determines that claimant recognized his right to representation and voluntarily chose to proceed without one and represent himself at the administrative hearing. Having made that informed choice, as documented by the colloquy on the record, the claimant's challenge to the adequacy of notice failed.

**B.**     **Finding of Claimant's Residual Functioning Capacity (RFC)**

The court is not persuaded by claimant's second argument that the ALJ erred by failing to assess claimant's Residual Functioning Capacity. The ALJ properly based his RFC findings on the State agency medical consultant's findings.

"Residual functioning capacity" ("RFC") is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a), [20 C.F.R. § 416.945(a)]. The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. 20 C.F.R. § 404.1545(b), [20 C.F.R. § 416.945(b)]. State agency consultants are considered experts in the Social Security disability programs and their assessments may be entitled to great weight if their opinions are supported by the evidence in the record. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p.

In this case, the ALJ properly based his findings regarding claimant's RFC on the opinion of Dr. Whitney, the State agency medical consultant. Dr. Whitney's findings are listed in claimant's Physical Residual Functional Capacity Assessment, which reveal a number of claimant's *abilities*. (R. 179-186). The physical assessment shows that the claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in a eight hour workday, and push and/or pull for an unlimited period. (R. 180). These conclusions were based on the evidence of the claimant's age and medical examinations. Dr. Whitney also found claimant's postural abilities included the ability to frequently climb ramp/stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladder/rope/scaffolds. (R. 181). Lastly, claimant's environmental limitations could withstand unlimited heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, hazards, but avoid concentrated exposure to extreme cold.

State agency consultants are experts in Social Security disability programs and their opinions are entitled to great weight when supported by evidence in the record. In this case, a Disability Specialist from the Alabama Determination Service filled out a Vocational Rationale Form indicating claimant's maximum work capacity was medium work and Dr. Lance Jr., a radiologist, found that "[n]o acute abnormalities are apparent" after administering tests on the

claimant. (R. 143, 177). As a result, after considering all of the relevant evidence, the court finds that the ALJ properly gave substantial weight to Dr. Whitney's opinion regarding claimant's RFC.

**C.     Subjective Complaints of Pain**

Claimant argues that the ALJ erred in finding that his complaints of pain were not fully credible. The court finds that, to the contrary, the ALJ properly discounted claimant's subjective complaints of pain as inconsistent with the objective medical evidence in the record.

The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. This standard requires evidence of an underlying medical condition in addition to *either* (1) objective medical evidence that confirms the severity of the alleged pain, *or* (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to cause the claimant's pain. *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991). When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain. This determination is a question of fact for the ALJ, subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). Because the application of this standard often requires a credibility assessment, the ALJ's reasons for discrediting the claimant's testimony must be premised on substantial evidence and be sufficiently explicit. *See, e.g., Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).

In applying this test, the ALJ must explicitly articulate his or her reasons for rejecting the claimant's subjective complaints of pain; if the ALJ fails to properly articulate his or her reasons

for discrediting the claimant's subjective complaints of pain, the claimant's testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Furthermore, the ALJ cannot reject a claimant's testimony based solely on his or her own observations or on criteria that are unsubstantiated by objective medical evidence. *Johns v. Bowen*, 821 F.2d 551, 556-7 (11th Cir. 1987).

      The ALJ determined that the record did not contain objective clinical evidence of debilitating pain in hands, knees, and ankles rendering him incapable of work. The ALJ specifically noted that claimant's subjective complaints of pain were inconsistent with evidence in the record because medical reports revealed claimant had no acute abnormalities. (R. 177). The ALJ also noted inconsistencies in testimony about his current work activity suggesting a lack of candor. For example, he testified that he had been the owner/operator of a scrap metal business for many years and stopped because of the pain and that he turned the business over to his wife and takes no further part in it. However, as the claimant explained the business, he repeatedly referred to his business activity in the present tense, but would then correct himself and use the past tense. Additionally, the claimant indicated to the ALJ that he owned a large 2-ton truck he previously used to haul scrap metal but now only used for personal transportation. However, at another point in the hearing, he indicated that he *uses* the truck to haul scrap metal, even after turning the business over to his wife. (R. 41).

      The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain. First, he referenced the medical evidence dated December 4, 2008, by Dr. James M. Lance, Jr., a radiologist. Dr. Lance, Jr. responded to Disability Determination Service regarding the claimant, writing that the radiographs of the right knee and right ankle taken on December 3, 2008 revealed ". . . early degenerative changes; however the joint space appears preserved. No

acute abnormalities are apparent." (R. 177).

Next, on December 26, 2008, Disability Specialist, Renita Parker from the Alabama Determination Service filled out a Vocational Rationale Form on behalf of claimant. (R. 142). In the assessment form, the specialist checked off that claimant's maximum work capacity was medium work and that the claimant did not acquire transferable skills. Additionally, she listed examples of jobs the claimant could perform which included assembler, automatic machine attendant, and box maker. All the jobs were listed under the medium strength/skill level. (R. 142).

Lastly, on January 24, 2009, the claimant requested a hearing before an ALJ disagreeing with the prior determination made on his claim for SSI but claimant had no additional evidence to submit. (R. 54).

Accordingly, the ALJ properly concluded that the record as a whole did not support a disabling level of pain and that claimant's subjective complaints of pain are not totally credible. The ALJ clearly articulated his assessment of claimant's credibility and corroborated it with substantial evidence in the record. Therefore, the court concludes that substantial evidence exists to support the ALJ's conclusion that claimant's testimony of disabling pain is not supported by the objective medical evidence in the record.

D.    **Claimant's Capacity and Exertional Level**

Claimant asserts that the ALJ should have limited his RFC to sedentary work. However, the functional limitations described by Dr. Whitney and accepted by the ALJ are consistent with medium work levels. Further, claimant identifies no specific medical proof in the record, or indeed, any substantial evidence in the record as a whole, other than rejected objective allegations that would support an RFC finding for sedentary work.

## V. CONCLUSION

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the decision of the Commissioner of the Social Security Administration will be AFFIRMED by separate order.

DONE and ORDERED this 31st day of January 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE